OPINION BY
STABILE, J.:
Appellants, S.P.W. (Mother) and M.J.W. (Stepfather), appeal from the orphans’ court’s October 6, 2014 order denying their petition for involuntary termination of the parental rights of J.M.W. (Father), to S.S.W. and S.F.W. (the Children). We affirm.
The orphans’ court set forth its findings of fact in its opinion of November 13, 2014. In relevant part, the court found that the Children have been in sole custody of Mother since January 4, 2013. Orphans’ Court’ Opinion, 11/13/14, at ¶ 6. Father has not attempted contact with Mother or Children since then. Id. at ¶ 25. Mother obtained an order pursuant *415 to the Protection Prom Abuse (PFA) Act[1] after a December 27, 2012 incident during which Father threatened to shoot himself in Mother’s presence and also grabbed Mother’s thigh, resulting in visible bruising. Id. at ¶¶ 8-9, 13. At a January 10, 2013 PFA hearing, Father consented to entry of an order without admitting the underlying facts. Id. at ¶ 17, Pursuant to that order, Mother had sole physical and legal custody of the Children and Father was not permitted any contact. Id. Also, on January 10, 2013, Father sent.flowers to Mother to apologize for his conduct. Id. at ¶ 19. On January 19, 2013',' Father took diapers for their baby to Mother’s office and left them as Mother was out of town. Id. at ¶21. For this attempted contact, police charged Father with indirect criminal contempt of the PFA order. Id. at ¶22. Father pled guilty and received a 90-day suspended sentence. Id. at ¶ 23.
Father participated in two months of counseling in April and May of 2013 for which a certificate of completion was provided to the Somerset County probation officer. Id. at ¶30. Father also underwent faith-based pasto'r'al counseling. Id. at ¶ 31. The orphans’ court found Father “has undergone a reversal in his mental outlook through having secured a new job with job training and steady responsible work.” Id. at ¶ 31.
The trial court extended the PFA order to January 10, 2016 because Father failed to appear at a December 12, 2013 PFA extension hearing. Id. at ¶36. Father’s employer denied his request for time off to attend the hearing and Father did not believe his appearance at the hearing would alter the result because he could not afford counsel. Id. at ¶ 37. Father attempted to obtain counsel for the custody proceeding though Legal Aid, but Legal Aid declined assistance due to criminal charges pending against Father. Id. at ¶ 43.
In its analysis, the orphans’ court noted Father’s emotional “turnaround” owing to psychiatric treatment. Id. at' 12.[2] Concerning § 2511(b), the orphans’ court noted, “There was no testimony from either party regarding thé relationship between [Father] and [the Children] prior to January 2013.” Id. Specifically, the court noted the older child was two at the time of separation and neither party offered evidence, on the nature of the bond between the older child and Father. Id. at 13.
The orphans’ court credited Father’s testimony that he could not afford counsel and that the absence of competent counsel rendered him unaware of the possibility of modifying the PFA to permit him to maintain a relationship with the Children. Id. In addition, “[a]ny attempts he made to make amends with [Mother] or to initiate contact with his in-laws was deemed contemptuous by. the court, resulting in his arrest.” Id.
On July 31, 2014, Appellants filed a petition seeking termination of Father’s parental rights pursuant to 23 Pá.C‘.S.A. § 2511(a)(1) and (b). At the conclusion of an October 3, 2014 hearing on the petition, the orphans’ court found that Appellants failed to. prove by clear and convincing evidence that termination of Father’s parental rights was appropriate under § 2511(a)(1). The orphans’ court entered an order to that effect on October 6, 2014, and Appellants filed a timely appeal.[3]
*416 Section 2511(a)(1) permits involuntary termination of parental rights where á parent exhibits a settled purpose of relinquishing his or her parental claim or refuses to perform parental duties for six months prior to the filing of a termination petition. 23 Pa.C.S.A. § 2511(a)(1). On appeal, Appellants argue the orphans’ court erred because the record reflects clear and convincing evidence of Father’s settled purpose of relinquishing his parental rights, or failure to perform parental duties. for at least six months, prior to Appellants’ petition.,
Although the six month- period immediately preceding the filing of- the petition is most critical to the analysis,-the court must consider the whole history of the case and not mechanically apply the six-month statutory provision. The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination.
In re I.J., 972 A.2d 5, 10 (Pa.Super.2009). “A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.” In re B., N.M., 856 A.2d 847, 855 (Pa,Super.2004).
Our' courts have piovided the following guidance on the meaning of parental duty:
There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
Because a child ne.eds more than a benefactor, parental duty requires that a parent‘exert himself to take and maintain a place of importance in the child’s life’. ,
In re C.M.S., 832 A.2d 457, 462 (Pa.Super.2003) (quoting In re Burns, 474 Pa. 615, 379 A.2d 535, 540 (1977)), appeal denied, 580 Pa. 687, 859 A.2d 767 (2004).
We review the orphans’ court’s decision for abuse of discretion or error of law, and we must defer to the orphans’ court’s findings of fact if the record supports them. In re L.M., 923 A.2d 505, 511 (Pa.Super.2007). As we have already noted, termination of parental rights is appropriate only where clear and convincing evidence supports termination under § 2511(a), Id.
Appellants argue the orphans’ court erred because Father has not seen the Children since the older one was two years old and the younger one was three months old. Appellants’ Brief at 11. Appellants also argue that Father’s repeated failure to appear at hearings and his failure to pro,cure counsel to pursue custody of the Children prove by clear and convincing evidence that Father has evinced a settled purpose to relinquish his rights and/or has failed to perform parental duties. As not *417 ed above, the orphans’ court was cognizant of these facts. The court found that Father’s absence was not the result of a refusal to perform parental duties or a settled purpose of relinquishing his rights. Rather:
In the instant case we have gone to great length to detail the facts surrounding Father’s separation from [the Children]. In'a short period of three weeks he was the subject of [I] a PFA action; [2] criminal charges of simple assault; [3] divorce action; [4] custody action;' [5] loss of his employment; [6] loss of his home; [7] felony theft charges; [8] criminal contempt charges; and [9] inpatient mental health treatment. All of the foregoing rose at the outset of an unstable period of his emotional and . mental health which resulted in his inpatient stay in a hospital psychiatric unit • as well as the engagement of intensive mental health counseling[.] In the court’s analysis, Father underwent an extremely difficult time in his life when everything was turned upside down, and he was, for the most part, on his own to sort out all that, had transpired.
Orphans’ Court Opinion, 11/13/14, at 11. The orphans’ court noted Father’s successful counseling, his decision to seek spiritual guidance, and his self-described emotional turnaround. Id, at 12. The orphans’ court also noted Father’s unsuccessful attempt to procure counsel through Legal Aid.
It is the court’s sense that he has suffered throughout his custody and PFA matters from lack of competent counsel to educate him that the PFA order regarding custody could be modified to allow him to reframe a custodial relationship with'[the Children]. While it may routinely be deemed evidence of lack of .continuing interest by a father that he not proceed through the court system to enforce and define his legal custodial rights, it was the sense of the court that Father herein legitimately believed that he-was-bound by the PFA order and its contempt power to avoid any contact with [the- Children]. Any attempt he made to make amends with’ his wife or to initiate contact with his in-laws was deemed contemptuous by the court, resulting in’his arrest.
Id. at 13.
The orphans’ court was free to credit Father’s testimony, and we must accept the court’s credibility determinations for purposes of appellate review. The court found as fact that Father has achieved a better mental Outlook through counseling, and has obtained a steady job. Id. at ¶¶ 30-31. The court also found as fact that Father missed at legst one court hearing because he would have lost his job if he took time off to attend the hearing.. Id. at ¶37.
Appellants also rely on a letter Father wrote to Mother in which he offered to relinquish his rights in order to end what he believed was harassment from Mother and her family. The, triabcourt quoted the letter verbatim, and found that Father wrote it out of “desperation” and eventually refused to sign an agreement relinquishing his rights when Mother sent one. Id. ¶¶ 39-40.
In summary, the orphans’ court opinion evinces a thorough. consideration of the facts, which are not substantially in dispute. We are cognizant, as was the orphans’ court, of'Appellants’ argument that the PFA, civil litigation, and criminal charges pending against Father were largely of his own making. Nonetheless, the orphans’ court' believed Father reached a low point in his life and attempted to fight his way out of it. -To that end, Father sought psychiatric and spiritual counseling, and obtained job training and a steady new job. • He has been steady in *418 paying his $400.00 per month support obligation. Mother testified that she offered Father custody ofi the Children if he attended counseling. N.T. Hearing, 10/3/14, at 15, 21-22. That plan never - came to fruition because Mother did not know Father underwent the requested counseling. Id. at .15, 35. For all of these reasons, the orphans’ court determined the record did not contain clear and convincing evidence warranting termination of Father’s parental rights under § 2511(a)(1).[4]
As an appellate court, we are bound by the orphans’ court’s credibility determinations and findings of fact. The record reflects that the orphans’ court tailored its decision to the circumstances of this case, including Father’s inability to obtain counsel and lack of awareness of his legal options regarding custody of the Children. Under the totality of the circumstances, the orphans’ court determined that termination of parental rights was not warranted. Based on all of the foregoing, we conclude the orphans’ court correctly applied the law, and we diseern neither abuse of discretion nor legal error in its conclusion. We therefore affirm the orphans’ court’s order.
Order affirmed.
BENDER, P.J.E., joins the Opinion.
MUNDY, J., files a Dissenting Statement.

. 23 Pa.C.S.A. § 6101 etseq.

. We have assigned page numbers to the orphans’ court’s opinion as it is not paginated and only the findings of fact appear in numbered paragraphs.

. Appellants filed a concise statement of errors along with their notice of appeal, in accord with Pa.R.A.P. 1925(a)(2)(i).

. Given this determination, the orphans' court had no occasion to analyze § 2511(b). The orphans’ court observed that the parties produced "minimal testimony” relevant to § 2511(b). Orphans’ Court Opinion, 11/13/14, at 12.